IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| SUSAN H. ABELES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:15-cv-00792 |
| | ) |
| METROPOLITAN WASHINGTON | ) |
| AIRPORTS AUTHORITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment.

**I. STATEMENT OF FACT**

Plaintiff, an Orthodox Jew, began working for Defendant in 1987. Defendant knew that Plaintiff was an Orthodox Jew. No evidence suggests that Plaintiff was denied leave to observe a religious holiday throughout more than two decades of employment. Plaintiff appears to have always been allowed to leave early on Fridays to be home before sundown to observe the Sabbath.

Plaintiff began working under a new supervisor, O'Hara, in 2009. The record reflects that O'Hara, like Plaintiff's supervisors before her, never denied Plaintiff's requested leave to observe a religious holiday or withheld permission for Plaintiff to leave early on Fridays to observe the Sabbath.

1

O'Hara provided Kosher food for Plaintiff at staff events.

Defendant's Absence and Leave Program specifies that annual leave must be requested by form or e-mail. Plaintiff was aware of the Absence and Leave Program.  The department in which Plaintiff worked utilized an informal planning calendar to help assess when people would be in the office. Marking the calendar was no substitute for formal procedure. Annual leave still had to be requested pursuant to the Absence and Leave Program. Neither O'Hara nor Hodge, Plaintiff's second-level supervisor, told Plaintiff that marking the calendar was an adequate substitute for following the formal policy.

O'Hara and Hodge were concerned about Plaintiff's performance prior to her AWOL status in April 2013. Plaintiff failed to meet her supervisor's expectations and instructions earlier in the year. Plaintiff does not dispute the accuracy of the allegations regarding insubordination set forth in a letter dated April 12, 2013, advising her that she may be suspended for five days for that charge, as well as her failure to follow the leave procedures and her AWOL status on April 1 and 2. Under Defendant's Conduct and Discipline directive, Plaintiff could have been suspended for five days simply on the insubordination charge alone.

Plaintiff attended meetings in February 2013 with Hodge, O'Hara, and Ramos, one of the Airports Authority's Labor

Relations Specialists, regarding being on time to work and complying with the Airports Authority's leave policy. Plaintiff's Work Goals and Performance Factors for 2013, of which she was advised in early 2013, required her to use leave in accordance with the Airports Authority's Absence and Leave Program.

Even for the first half of Passover 2013, Plaintiff demonstrated that she was aware of Defendant's leave policy. On March 21, 2013, Plaintiff requested leave from O'Hara to observe the first two days of Passover on March 26 and 27, 2013. Plaintiff followed proper procedure by discussing her requested leave with O'Hara, receiving approval, then sending O'Hara an Outlook calendar invitation. That leave was granted. Nothing in the record indicates that Plaintiff was unaware on March 21 that she would also need leave on April 1 and 2 to observe the final days of Passover. Plaintiff returned to the office on March 28, 2013, after being off work for the first two days of Passover. While O'Hara was in the office that day, Plaintiff did not request leave from her for April 1 and 2.

On March 29, 2013, Plaintiff sent an Outlook Calendar invitation to O'Hara and Hodge, "notifying" them that she would be out of the office on April 1 and 2, 2013. O'Hara was out of the office and did not respond to the invitation. O'Hara did not see Plaintiff's Calendar invite until she returned to the office

on April 2, 2013.

Hodge saw Plaintiff's March 29, 2013, Calendar invite on March 29. After exchanging e-mails with Plaintiff, however, she believed that Plaintiff requested leave from O'Hara for April 1 and 2 and that the leave was approved. O'Hara, not Hodge, was Plaintiff's leave approving official. Regardless what Plaintiff intended to convey through the March 28, 2013, Outlook Calendar invite, Plaintiff did not request leave for April 1 and 2, 2013, in accordance with Defendant's leave policy. Plaintiff was placed on AWOL status for April 1 and 2, 2013, because she failed to request leave for those two days prior to her absence.

Plaintiff further demonstrated her understanding of the leave policy by when she requested two days of leave in May 2013 to observe another Jewish holiday. That properly requested leave was granted.

Plaintiff voluntarily retired from the Airports Authority on May 31, 2013. She filed this suit in the U.S. District Court for the District of Columbia on May 5, 2015, alleging violations of 42 U.S.C. § 2000e-5 (religious discrimination by employer), 42 U.S.C. § 1983 (civil action for deprivation of rights), the Religious Freedom Restoration Act, and the Virginia Religious Freedom Act. Plaintiff's claims were against the Metropolitan Washington Airports Authority, and her supervisors Hodge and O'Hara. The case was transferred to this Court on June 23, 2015.

4

On August 17, 2015, this Court granted Defendants Hodge and O'Hara's motions to dismiss, and denied Defendant Metropolitan Washington Airports Authority's Motion to Dismiss. Defendant Metropolitan Washington Airports Authority now moves for summary judgment on all counts.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment will be granted unless "a reasonable jury could return a verdict for the nonmoving party" on the evidence presented. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An otherwise properly supported summary judgment motion will not be defeated by the existence of a dispute as to immaterial facts; only disputes over facts that might affect the outcome of the trial will properly preclude the entry of summary judgment. Id. at 248.

Plaintiff bears the initial burden of proof as to each and every element of his claims. See United States ex rel. Berge v. Bd. of Trustees of the Univ. of Alabama, 104 F.3d 1453, 1462 (4th Cir. 1997). "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal citation

5

omitted) (internal quotation marks omitted); <u>Hoschar v. Appalachian Power Co.</u>, 739 F.3d 163, 169 (4th Cir. 2014).

## III. DISCUSSION

Plaintiff claims that she suffered unlawful discrimination on the basis of her orthodox Jewish faith when she was considered absent without leave ("AWOL") and suspended for five days after not appearing for work on April 1 and 2, 2013-the last two days of Passover. The record reflects neither direct nor circumstantial evidence that Plaintiff was considered AWOL or suspended because of her religion, or that religious animus played any role in the discipline she received. To the contrary, Plaintiff could observe her religious holidays and maintain her employment by following neutral rules which apply to all of Defendant's employees. Further, Defendant is subject neither to the Religious Freedom Restoration Act nor the Virginia Religious Freedom Act.

1. **Defendant is Entitled to Summary Judgment on Count I (42 U.S.C. § 2000e-5) Because there is No Evidence of Discrimination.**

For 26 years, Defendant routinely granted Plaintiff leave for Sabbath and religious holidays. While failing to follow formal procedure to request leave in April 2013, the record reflects that Plaintiff knew of and followed the policy in the preceding and proceeding months of March and May. Plaintiff

6

offers no counter narrative that she did follow Defendant's formal procedure, and Plaintiff offers no explanation why she failed to follow procedure that April. Regarding the five-day suspension, Plaintiff's performance undisputedly deteriorated prior to Passover 2013. The undisputed charge of insubordination merited a five day suspension penalty on its own, regardless of the allegedly discriminatory AWOL classification.

The record does not suggest that Plaintiff was subject to slurs or jokes regarding her religion. Plaintiff presents no direct evidence that Hodge, O'Hara, Ramos, or any of Defendant's other employees involved in Plaintiff's discipline took any adverse action against her because of her religion. Plaintiff knew the procedure, Plaintiff followed the procedure in the months before and after this alleged discrimination, Plaintiff was disciplined for failing to follow the procedure in April 2013 (among other uncontested reasons), and Plaintiff now construes that discipline as discrimination because her failure to follow the known procedure fell on a religious holiday.

Without evidence of direct discrimination, Plaintiff may only prove discrimination circumstantially. To establish circumstantial discrimination, a plaintiff must establish a *prima facie* case of discrimination—in this case, of disparate treatment regarding the imposition of AWOL status and the five-day suspension; the employer must articulate a legitimate, non-

7

discriminatory reason for the discipline; and the plaintiff must establish that the employer's legitimate, non-discriminatory reason for the discipline is a mere pretext to mask unlawful discrimination. See Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

In the Fourth Circuit, to establish a *prima facie* discrimination case from Title VII (here, the root of Count 1—42 U.S.C. § 2000e-5), a plaintiff must show membership in a protected class, satisfactory job performance, adverse employment action, and different treatment from similarly situated employees outside the protected class. See Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd on other grounds, 132 S.Ct. 1327 (2012).

Here, Plaintiff is a member of a protected class because she is an Orthodox Jew. Plaintiff was subject to an adverse employment action, because the allegedly discriminatory AWOL finding was part of the reason she was suspended. However, Plaintiff fails to establish a prima facie case of discrimination under Title VII because she cannot demonstrate satisfactory job performance or that she was treated differently from similarly situated employees outside the protected class.

The undisputed facts demonstrate that Plaintiff's performance was unsatisfactory. Plaintiff failed to meet her

8

work goals and to produce her deliverables on time. Plaintiff did not produce her work in accordance with her supervisor's expectations and instructions, involving "missed deadlines," having "work products . . . not complete three months after they were supposed to be delivered," and engaging in "excuse-making as to why stuff was not getting done." Plaintiff does not dispute the accuracy of the allegations regarding insubordination set forth in the April 12, 2013, letter proposing the five day suspension. Whether a five-day suspension was prudent given the charges contained within the April 12, 2013, proposed suspension letter is not for this Court to decide. As the Fourth Circuit held,

> While reviewing the employer's articulated reasons for discharge and the plaintiff's refutation thereof, we must keep in mind that "Title VII is not a vehicle for substituting the judgment of a court for that of the employer." Particularly, this Court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination."

DeJarnette v. Corning Inc., 133 F.3d 293, 298-99 (4th Cir. 1998), quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997) (internal citation omitted).

Similarly, Plaintiff fails to make out a *prima facie* case because she cannot show she was treated any differently than similarly situated employees outside the protected class. Plaintiff has no evidence that she was treated more harshly than non-Orthodox Jews who were insubordinate, failed to follow leave

9

procedure and were AWOL. The undisputed material facts demonstrate that Defendant disciplined Plaintiff in accordance with its Absence and Leave Program and Conduct and Discipline Directive, to which all Defendant's employees are subject. Plaintiff cannot establish a *prima facie* case of discrimination, and her claims under Title VII must be dismissed.

2. **Defendant is Entitled to Summary Judgment on Count II (42 U.S.C. § 1983) Because the Claim is Time Barred.**

Because 42 U.S.C. § 1983 does not contain an express statute of limitations, the statute of limitations applicable to § 1983 claims must come from state law. In Virginia, as prescribed by the Fourth Circuit, "[w]ith regard to the § 1983 and equal-protection claims, the statute-of-limitations period for both is two years." A Soc'y Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011), citing Lewis v. Richmond City Police Dept., 947 F.2d 733, 735 (4th Cir. 1991) . The accrual period, however, is governed by federal law and "accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" A Soc'y Without A Name, 655 F.3d at 348, quoting Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975).

Here, Defendant's suspension was proposed on April 12, 2013, and finalized on May 3, 2013. Defendant was advised by letter that she would be suspended for five days for the reasons set forth in the April 12, 2013 letter. Because Defendant

10

acknowledged that letter by signature on May 3, 2013, she knew of the injury which is the basis of this action no later than May 3, 2013.

Defendant filed her Complaint in this case in the U.S. District Court for the District of Columbia on May 5, 2015. Because Defendant's § 1983 cause of action accrued on May 3, 2013, and she waited more than two years to file her claim under § 1983, the claim is time barred.

3. **Defendant is Entitled to Summary Judgment on Count III Because Defendant is Not Subject to the Religious Freedom Restoration Act.**

Count III alleges that Defendant violated the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, et seq. The RFRA applies only to government and "covered entities," not independent entities like Defendant. "Government" is defined as a "branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity." 42 U.S.C. § 2000bb-2(1) (2015). A "covered entity" is defined as the "District of Columbia, the Commonwealth of Puerto Rico, and each territory and possession of the United States." Id. at § 2000bb-2(2).

Defendant, however, is "a political subdivision constituted to operate and improve the Metropolitan airports," existing "independent of Virginia and its local governments, the District of Columbia, and the United States Government." 49 U.S.C. §

11

49106(a)(2)-(3) (2006). Congress clearly articulated its intent to divest the United States of responsibility for these airports. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992).

Defendant is not a branch, department, agency, instrumentality or official of the U.S. Government; nor is the Defendant part of the government of D.C., Puerto Rico or any other territory of the United States. Defendant is not subject to the RFRA by the plain language of the Act.

Plaintiff failed to develop facts to suggest that Defendant is subject to the RFRA. Defendant is entitled to summary judgment as to Count III.

4. **Defendant is Entitled to Summary Judgment on Count IV Because Defendant is not Subject to the Virginia Religious Freedom Act.**

Count IV of the Complaint alleges that Defendant is a government entity covered by the Virginia Religious Freedom Act (VRFA), Va. Code Ann. § 57-2.02 (A), and that Defendant's treatment of Abeles violated the VRFA. This claim fails because Defendant is not a governmental entity within the meaning of the VRFA.

By definition, Defendant is not subject to the VRFA. The VRFA applies only to a "government entity," defined as "any branch, department, agency, or instrumentality of state government," or "any political subdivision of the Commonwealth."

Va. Code Ann. §57-2.02 (2015). Again, Defendant is "a political subdivision constituted to operate and improve the Metropolitan airports," and it exists "independent of Virginia and its local governments, the District of Columbia, and the United States Government." 49 U.S.C. § 49106(a)(2)-(3) (2006). Further, under the Airports Authority Compact, Defendant is "a public body corporate and politic and independent of all other bodies" and is "independent of the Commonwealth and its local political subdivisions." Va. Code Ann. §§ 5.1-153; 5.1-156 (A); 5.1-156 (B) (2015).

The record presents no evidence to support Plaintiff's contention that routine Airports Authority personnel decisions constitute actions under state law. There is no other state law, rule or regulation allegedly violated in this case. Defendant is entitled to summary judgment as to Count IV.

## IV. CONCLUSION

It appearing to the Court that Plaintiff fails to state a claim of discrimination, summary judgment should be granted for all four counts. Defendant's Motion for Summary Judgment should be granted.

An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 1, 2016